THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Case No. 4:09-cv-217

| | |
|---|---|
| HARRELL AND OWENS FARM,<br><br>                 Plaintiff,<br><br>   v.<br><br>FEDERAL CROP INSURANCE<br>CORPORATION, a corporation within the<br>United States Department of Agriculture;<br>UNITED STATES DEPARTMENT OF<br>AGRICULTURE, RISK MANAGEMENT<br>AGENCY; ACE PROPERTY AND<br>CASUALTY INSURANCE COMPANY; and<br>RAIN AND HAIL, LLC,<br><br>                 Defendants. | **COMPLAINT AND<br>PETITION FOR JUDICIAL REVIEW** |

Plaintiff Harrell and Owens Farm ("Harrell Owens"), complaining of the acts of the Defendants and petitioning the Court for judicial review of a final agency action, alleges and states that:

1.     Harrell Owens has purchased insurance policies that are reinsured by the federal government and that cover the production of sweet potatoes. With this action Harrell Owens seeks judicial review of a final agency decision of the National Appeals Division of the United States Department of Agriculture interpreting policy language.

2.     As set out below, Harrell Owens contends that the agency's reading of the claim adjustment procedures in the sweet potato crop policies issued to Harrell Owens should be set aside as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. The agency's unlawful interpretation substantially impacts the calculation of Harrell Owens's losses for claims it has made for the 2006 and 2008 crop years.

3. Harrell Owens also seeks vacatur of the arbitration award entered under its crop policy with respect to its 2006 claim, on the grounds that the award rests on the agency's unlawful interpretation of the operative terms of the policy, rests on actions taken by the arbitrator in excess of his defined scope of authority, and is otherwise subject to vacatur under the Federal Arbitration Act. Harrell Owens intends to file, within the time period prescribed by 9 U.S.C. § 12, a separate motion to vacate the arbitration award that more fully sets out the grounds for vacatur.

## PARTIES

4. Plaintiff Harrell Owens is a partnership formed for the purpose of engaging in the farming business in Edgecombe County, North Carolina, and it carries its own tax identification number. The partners of Harrell Owens are Wayne Harrell, Selena Harrell, Carl Allen Harrell, Deborah Ann Harrell, Willie James Owens, and Pamela Owens, and each partner resides in Edgecombe County, North Carolina.

5. The crop insurance policies at issue in this matter were issued to Harrell Owens, naming Harrell Owens as the insured.

6. Defendant Federal Crop Insurance Corporation (the "FCIC") is a government corporation organized under the Federal Crop Insurance Act, 7 U.S.C. § 1501, et seq., and with its principal office in the District of Columbia. The FCIC was created as an agency of and within the United States Department of Agriculture to carry out the purposes of the Federal Crop Insurance Act, and it is therefore subject to the jurisdiction of this Court. Among other things, the FCIC is authorized to interpret the meaning and applicability of federal crop policies such as the policies at issue in this matter.

7. Defendant United States Department of Agriculture, Risk Management Agency ("RMA") is an agency of the United States government subject to the jurisdiction of this Court.

8.     Defendant ACE Property and Casualty Insurance Company is a corporation organized and existing under the laws of the State of Pennsylvania and that does business in North Carolina and elsewhere.

9.     Defendant Rain and Hail, LLC ("Rain and Hail") is a limited liability company organized and existing under the laws of the State of Iowa and that does business in North Carolina and elsewhere.

10.     Upon information and belief, Rain and Hail acts as agent for ACE Property and Casualty Insurance Company in issuing and servicing insurance policies, including the policies at issue in this case. Rain and Hail and ACE Property and Casualty Insurance Company are referred to collectively as "ACE."

## JURISDICTION AND VENUE

11.     Original jurisdiction over this case is conferred upon this Court pursuant to 28 U.S.C. § 1331 because this case arises under the laws of the United States, including under the Federal Crop Insurance Act, 7 U.S.C. § 1501, et seq., and the Administrative Procedure Act, 5 U.S.C. § 701, et seq.

12.     In addition, 7 U.S.C. § 6999 and 7 C.F.R. § 11.13 specifically confer jurisdiction upon the Court, providing that "[a] final determination of the [National Appeals] Division [of the United States Department of Agriculture] shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5."

13.     Certain basic terms and conditions of the crop policies at issue in this case are codified at 7 C.F.R. § 457.8 (the "Basic Provisions"). The Basic Provisions specifically provide for judicial review of final determinations made by the FCIC relating to crop policies.

14.     In particular, Section 20(e) of the Basic Provisions provides that if an insured disagrees with a determination made by the FCIC, "if you elect to bring suit after completion of

any appeal, such suit must be filed against FCIC not later than one year after the date of the decision rendered in such appeal."

15.     Section 20(c) of the Basic Provisions also provides the right to judicial review of an arbitration award, providing that "[a]ny decision rendered in arbitration is binding on you and us unless judicial review is sought in accordance with section 20(b)(3). Notwithstanding any provision in the rules of the AAA, you and we have the right to judicial review of any decision rendered in arbitration." Section 20(b)(3) provides, in turn, that if judicial review is sought of an arbitration decision, suit must be filed within one year of the rendering of the decision.

16.     This action is timely under the Federal Crop Insurance Act, under the Basic Provisions, and under the crop policies at issue, as it is brought within one year of the final determination of the National Appeals Division of the United States Department of Agriculture (the "NAD") and within one year of the arbitration decision that incorporated the agency's determination.

17.     Venue is proper in this Court and District pursuant to 7 U.S.C. § 1506(d), which provides that the FCIC may be sued in the United States District Court "in the district wherein the plaintiff resides or is engaged in business." Harrell Owens resides and is engaged in the farming business in this District, the insured acreage is located in this District, and the claims asserted herein arose in this District.

18.     Harrell Owens has exhausted all administrative remedies that are, or may be, requisites to instituting this action pursuant to 7 U.S.C. § 6912(e) in that Harrell Owens obtained a final determination from the FCIC, which Harrell Owens subsequently appealed through the NAD to a final determination from the Director of the NAD. The final determination of the Director of the NAD constitutes a final agency action.

## FACTUAL ALLEGATIONS

19.     Harrell Owens is a family-run farming operation in Edgecombe County, North Carolina.

20.     In 2005 Harrell Owens began participating in a FCIC pilot program designed to offer insurance coverage to farmers for their sweet potato production.  As part of that program, Harrell Owens purchased insurance policies written by ACE and reinsured by RMA.  These polices insured a certain level of sweet potato production, namely 75% of Harrell Owens's average yield for the insured acreage.

21.     Harrell Owens and the Defendants dispute the manner in which ACE settled claims Harrell Owens made under its 2006 and 2008 Multiple Peril Crop Insurance Policies, Nos. MP-0017748 and MP-0647564, respectively (the "Crop Policies," or, with respect to a particular year, the "Crop Policy").  The language of the 2006 and 2008 Crop Policies is the same with respect to matters pertinent to this action.

22.     Certain basic terms and conditions of the Crop Policies are set out in the Basic Provisions, which are incorporated by reference into the Crop Policies and codified in the Code of Federal Regulations.  The Basic Provisions did not change between 2006 and 2008.

23.     In reliance on the promises of coverage made in the Crop Policy, Harrell Owens planted 413.7 acres of sweet potatoes in 2006.  The policy provided for an insured amount of production of approximately 185 hundredweight ("cwt.") of sweet potatoes per acre (subject to the 75% coverage level), along with a price election of $14.50 per cwt.  The insured amount is calculated based on an average of Harrell Owens's yearly actual harvested production for that acreage over a period of years.

24.     Section 12 of the Crop Policies prescribes the manner in which claims under the policies are to be adjusted.  Section 12(c) provides that "the total production to count, specified

in hundredweight of field pack production," will include "all appraised production" in certain narrow instances and "all harvested production."

25.     In particular, Section 12(c)(1) provides that total production to count will include "all appraised production <u>as follows</u>." (emphasis added). Section 12(c)(1)(i) goes on to provide that appraised production "not less than the production guarantee"[1] will be counted for any acreage: (1) that has been abandoned, (2) for which the producer did not provide a scouting report, (3) for which the producer did not properly maintain unharvested representative samples, (4) that the producer put to another use without consent, (5) that was damaged solely by uninsured causes, and (6) for which the producer did not provide acceptable records of disposition.

26.     Section 12(c)(1)(ii) provides that appraised "potential production" will be counted for insured acreage that the producer "intend[s] to put to another use or abandon[s] with our consent," with certain exceptions set out in that subsection.

27.     Section 12(c)(2) provides that "all harvested production" will be included in total production to count. Unlike the limitations set out in Section 12(c)(1) on appraised production, Section 12(c)(2) does not limit "all harvested production" "as follows," nor does it enumerate specific, limited circumstances in which "all harvested production" is to be counted.

28.     Section 12(c)(3) provides that if the insured reports uninsured acres due to planting in excess of the number of acres permitted to be insured, total production to count will be calculated by "multiplying the sum of the harvested and appraised production by the ratio of the insured acres to the total acres planted."

---

[1] In the 2008 Crop Policy, the phrase "not less than the production guarantee" was changed to read "not less than the appraised production."

29.    The year 2006 was a poor one for sweet potatoes in Edgecombe County.  The summer and fall were unusually wet, resulting in a low level of production.  Harrell Owens harvested only approximately 68 cwt. of sweet potatoes per acre, far below its average harvested production for this acreage.

30.    When Harrell Owens's loss is calculated using "all harvested production" for the insured acreage in 2006, Harrell Owens is due an indemnity amount of $426,778.50 under the Crop Policy.  None of the Defendants have disputed that this figure results when all harvested production is used to adjust Harrell Owens's loss in 2006.

31.    In September 2006 and before harvest, ACE performed an appraisal of Harrell Owens's sweet potato acreage.  ACE's estimate of production, as reflected in the appraisal, greatly exceeds the amount of sweet potatoes Harrell Owens actually harvested.  Nevertheless, ACE used the higher appraisal estimate to adjust Harrell Owens's 2006 claim.

32.    ACE has explained to Harrell Owens that it did so pursuant to its reading of procedures set out in the Sweetpotato New Policy Loss Adjustment Standards Handbook (the "LASH").  Section 7(B) of the LASH provides that the insurer is to use "the greater of" appraised and harvested production in adjusting a claim under a sweet potato crop policy.

33.    However, Section 12 of the Crop Policies does not provide that appraised production determines production to count generally, nor does it provide or suggest in any way that the greater of appraised and harvested production is always to be used in adjusting claims.  This conclusion is underscored by the illustrative calculations provided in Section 12(d) of the Crop Policies, none of which references appraised production.  In fact, the first illustration specifically uses 5,000 cwt. as production to count, noting that "[y]ou are only able to harvest 5,000 cwt. from the 100 acres due to a drought that reduced your yields."

34.     Because Section 7(B) of the LASH requires use of the greater of appraised and harvested production in all instances, it conflicts directly with the adjustment procedures set forth in Section 12(c) of the Crop Policy and therefore must give way.  The Crop Policy specifically provides that its terms control over the Basic Provisions, and the terms of the Crop Policy and Basic Provisions control over any handbook procedures, such as the LASH.

35.     In addition, in counting sweet potatoes as part of its appraisal, ACE did not consider whether a particular sweet potato was diseased or damaged because of a covered cause of loss.  Instead, it considered only whether the sweet potato exceeded 1.5 inches in diameter, citing Section 7(A) of the Sweet Potato LASH.  Section 7(A) of the LASH was revised for the 2008 crop year, and it now requires appraisers to assess potato quality by considering the firmness of any sweet potato sampled during an appraisal.

36.     Based on its appraisal figures, ACE offered Harrell Owens $93,395 in settlement of its 2006 claim.  Although Harrell Owens requested and gave ACE the opportunity to inspect the acreage after the harvest was complete to verify that Harrell Owens had not left in the field sweet potatoes it could sell and that ACE's appraisal greatly overstated the yield of Harrell Owens's insured sweet potato acreage, ACE declined to do so.

37.     Because ACE's offer was $333,384.00 short of what Harrell Owens contended it was entitled to receive under the Crop Policy when all harvested production is used to adjust its loss, Harrell Owens demanded that its 2006 claim be arbitrated pursuant to Section 20 of the Basic Provisions.

38.     In the course of that proceeding, on September 20, 2007, ACE requested that the FCIC interpret the procedures set out in the LASH, asking the FCIC to conclude that "ACE was required to determine the sweetpotato losses of the insured for 2006 in accordance with the

guidelines and procedures set forth in the Sweetpotato LASH" and that "in determining the loss to the insured, ACE was not allowed to consider the quality of the roots as long as they measured 1.5 inches or greater in diameter and could be used for any purpose, including livestock feed."

39.     Harrell Owens joined ACE's submission for the purpose of setting out its position.  As Harrell Owens explained, the LASH procedures calling for use of an appraisal to determine production to count—even if the acreage was harvested before the insurance period ended—conflict with the Crop Policy and Basic Provisions and therefore do not apply.  Further, Harrell Owens went on to explain that even if an appraisal had been appropriate under the circumstances of this case (and it was not), that any such appraisal was required to take into consideration whether sweet potatoes were damaged by a covered cause of loss.

40.     Section 20(a)(1) of the Basic Provisions provides:

> However, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.

That section goes on to provide that any FCIC interpretation "will be binding in any mediation or arbitration."  Subpart (iii) of Section 20(a)(1) provides that after obtaining review from the NAD, a party may seek judicial review.

41.     On December 17, 2007, the FCIC issued its response to ACE's request for an interpretation.  The FCIC determined that the LASH procedure calling for use of the greater of appraised and harvested production did not conflict with the Crop Policy or with the Basic Provisions.  The FCIC further determined that the LASH procedure that prohibited an insurer from considering root quality in making an appraisal likewise did not conflict with the Crop Policy or the Basic Provisions.

42. On January 16, 2008, Harrell Owens sought reconsideration of the FCIC interpretation, and on April 7, 2008, the FCIC issued a ruling affirming its prior interpretation finding no conflict with the LASH procedures followed by ACE on the one hand and the Crop Policy and Basic Provisions on the other, albeit on different grounds.

43. Harrell Owens then appealed the FCIC interpretation to the NAD. A hearing officer of the NAD took evidence and testimony at a hearing, and she later issued an Appeal Determination on August 21, 2008.

44. In her Appeal Determination, the hearing officer addressed two issues: (1) whether the FCIC interpretation was incorrect because it concluded the Crop Policy requires use of appraised production whenever it is greater than harvested production in calculating indemnity payments; and (2) whether the FCIC interpretation was incorrect because it concluded the size of the sweet potato root is the only criteria used in determining production to count. The hearing officer answered both questions in the negative, concluding the FCIC interpretation in ACE's favor was correct in all respects (although on different grounds than those set out in the initial FCIC interpretation and in the interpretation issued on reconsideration).

45. Harrell Owens then appealed the hearing officer's adverse rulings to the Director of the NAD, the final step in the agency appeal process. The Director issued his Director Review Determination on December 30, 2008. The Director Review Determination is attached hereto as Exhibit A. His determination represents the final agency action on the matters ACE submitted to the FCIC for interpretation.

46. The Director affirmed in part and reversed in part the hearing officer's decision on issue (1) above. The Director affirmed the hearing officer on issue (2) concerning the criteria to be used in arriving at production to count as part of the appraisal.

47.     The Director separated his review of Harrell Owens's appeal of issue (1) into two parts, (A) whether the LASH procedure followed by ACE (requiring use of the greater of appraised and harvested production without exception) conflicts with Section 12 of the Crop Policy and (B) whether that LASH procedure conflicts with Section 15(b) of the Basic Provisions.

48.     The Director upheld the hearing officer as to (A), but reversed her as to (B).  In particular, the Director concluded as follows:

> Therefore, I find that RMA did not err in concluding that the Handbook language does not conflict with Paragraph 12(c) of the Pilot Provisions, but instead provides an insurance company with a reasonable interpretation of the manner in which it is to be implemented.  Consequently, I find no error in RMA's conclusion that the LASH procedures are properly applicable to the adjustment of Appellant's claim of loss as they relate to the Pilot Provisions.  Despite the above, I find that Section 7(B) of the LASH does conflict with Paragraph 15(b) of the Basic Policy.

(Ex. A, p. 12).

49.     With respect to (A), the Director found no conflict between Section 12 of the Crop Policy and Section 7(B) of the LASH because, in his view, the various "options" set out in Section 12(c) are "inclusive."  As a result, he found that the LASH procedure "simply explains that in implementing this portion of the Pilot Provisions, an insurance company adjuster must use the greater of the options in all instances in which check strips are left and it is possible to conduct an appraisal."  Harrell Owens contends this reading of Section 12(c) of the Crop Policy is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and is therefore unlawful and should be set aside pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, et seq.

50.     With respect to (B), the Director found that the plain language of Section 15(b) of the Basic Provisions makes clear that there are circumstances in which the crop is harvested after

it has been appraised that harvested production is to be used even if appraised production exceeds harvested production. Because the LASH procedure followed by ACE would not permit the use of harvested production in that circumstance, the Director concluded that the procedure must give way:

> A plain reading of Paragraph 15(b) makes it clear the Basic Policy contemplates that in cases where a producer harvests the crop after the crop has been appraised (as long as the producer can provide the insurance company with records establishing the amount of harvested production), there are circumstances in which harvested production even if it is lower than appraised production must be used to determine production to count for purposes of adjusting the loss. Yet, as Appellant notes, Section 7(B) of the LASH excludes such circumstances, stating that production to count for any harvested acreage be the greater of the appraisal or the total of all the harvested sweet potatoes in all circumstances in which check strips are left for purposes of conducting the appraisal. Thus, the LASH language at Section 7(B) directly conflicts with the language found at Paragraph 15(b) of the Basic Policy. . . . Accordingly, if the arbitrator were to find that the factual circumstances of Appellant's case fit within the parameters of Paragraph 15(b) of the Basic Policy, the arbitrator and indeed, Interested Party, would be obligated to apply the language of 15(b) without reference to the conflicting provisions in Section 7(B) of the LASH.

(Ex. A, pp. 13-14).

51.     As alleged above, the Director's determination was binding upon the parties and the arbitrator in the arbitration proceeding initiated by Harrell Owens. The arbitrator was therefore prohibited from revisiting the Director's interpretation of Section 12(c) of the Crop Policy and Section 15(b) of the Basic Provisions, and the arbitrator was prohibited from revisiting the Director's conclusions as to the interplay between those provisions and the LASH procedures at issue.

52.     On November 2, 2009, the arbitrator convened the arbitration hearing on Harrell Owens's 2006 claim.

53.     In the course of that hearing, ACE argued that Section 15(b) was inapplicable because Harrell Owens had always intended to harvest its insured sweet potato acreage despite the poor conditions.   This reading of Section 15(b) is not reflected in the Director's determination and, indeed, is contrary to the Director's interpretation and to the plain language of the Basic Provisions.

54.     Nevertheless, in the award issued by the arbitrator on November 19, 2009, the arbitrator adopted the narrow reading of Section 15(b) of the Basic Provisions advanced by ACE and, as a result, found there to be no conflict between that provision and the LASH procedure used by ACE in adjusting Harrell Owens's 2006 claim.   The arbitrator's award is attached hereto as Exhibit B.

55.     The arbitrator adhered to the Director's interpretation that Section 7(B) of the LASH, which ACE used to adjust Harrell Owens's claim, did not conflict with Section 12(c) of the Crop Policy.

56.     Accordingly, the arbitrator found no conflict between Section 7(B) of the LASH on the one hand and the Crop Policy and Basic Provisions on the other.   In relying on the Director's unlawful interpretation of Section 12(c) of the Crop Policy, the arbitrator's award was infected by error under the Federal Arbitration Act and 7 U.S.C. § 6999 and therefore should be vacated and remanded.   In giving his own interpretation of Section 15(b) of the Basic Provisions, the arbitrator exceeded his authority in violation of 9 U.S.C. § 10, and his award should therefore be vacated and remanded.

57.     Harrell Owens has also asserted a claim under its 2008 Crop Policy.   Once again, ACE appraised Harrell Owens's insured sweet potato acreage, and the appraisal estimate again significantly exceeded the amount of sweet potatoes Harrell Owens actually harvested.   ACE's

appraiser specifically noted on his appraisal report that the insured acreage was "picked clean" of sweet potatoes. Nevertheless, ACE followed Section 7(B) of the LASH in adjusting Harrell Owens's 2008 claim, just as it did with respect to Harrell Owens's 2006 claim, using the greater of appraised and harvested production.

58. For the same reasons set out above, Section 7(B) of the LASH, by requiring use of the greater of appraised and harvested production in all instances and without exception, conflicts directly with Section 12(c) of the Crop Policy and with Section 15(b) of the Basic Provisions and therefore should not be used in adjusting Harrell Owens's 2008 claim.

59. When all harvested production is used to adjust Harrell Owens's 2008 claim, Harrell Owens is due an indemnity payment of $53,081.70. When appraised production is used, no indemnity payment is due at all. Because ACE has followed Section 7(B) of the LASH rather than Section 12(c) of the Crop Policy, ACE has refused to make any payment to Harrell Owens on its 2008 claim.

60. On September 9, 2009, Harrell Owens instituted an arbitration proceeding with respect to its 2008 claim. Absent judicial review, as requested herein, the Director's interpretation of Section 12(c) of the Crop Policy and its relationship to Section 7(B) of the LASH will be used adjudicating Harrell Owens's 2008 claim.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment and Judicial Review**
**Pursuant to 7 U.S.C. § 6999 and 5 U.S.C. § 701, et seq.)**

61. The allegations contained in the foregoing paragraphs are repeated, realleged, and incorporated herein by reference as if fully set forth.

62. Pursuant to 7 U.S.C. § 6999 and Section 20(e) of the Basic Provisions, Harrell Owens is entitled to judicial review of the FCIC's interpretation of the Crop Policies, the Basic Provisions, and the LASH, as reflected in the Director Review Determination of the NAD.

63. The Director concluded in his Director Review Determination that Section 7(B) of the LASH, which requires use of the greater of appraised and harvested production in all instances, does not conflict with Section 12(c) of the Crop Policies.

64. Harrell Owens is aggrieved by the Director Review Determination because ACE has followed Section 7(B) of the LASH, rather than Section 12(c) of the Crop Policies, in adjusting Harrell Owens's 2006 and 2008 claims. ACE's use of Section 7(B) of the LASH has reduced the indemnity owed to Harrell Owens under the Crop Policies on those claims by $333,384.00 and $53,081.70, respectively.

65. The Director also concluded in his Director Review Determination that Section 7(A) of the LASH, which requires the insurer's appraiser to consider only root size, and not root quality, in arriving at an appraisal estimate, does not conflict with Section 12(c) of the Crop Policies.

66. Harrell Owens is aggrieved by the Director Review Determination because ACE has followed Section 7(A) of the LASH, rather than Section 12(c) of the Crop Policies, in adjusting Harrell Owens's 2006 claim.

67. The Director Review Determination represents the final agency action concerning the meaning, scope, and applicability of the Crop Policies, the Basic Provisions, and the LASH, and Harrell Owens has no other adequate remedy in a court.

68. The Director Review Determination, insofar as it concludes that neither Section 7(B) nor Section 7(A) of the LASH conflicts with Section 12(c) of the Crop Policies, is unlawful and should be set aside pursuant to 5 U.S.C. § 706. The Director's interpretation of these provisions fails to give effect to the plain language of the Crop Policies and deprives Harrell Owens of the benefit of his bargain in purchasing crop insurance as part of a federal pilot

program to provide insurance for sweet potato production. Accordingly, the Director Review Determination is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

69.     Harrell Owens is therefore entitled to an order setting aside and declaring unlawful the Director Review Determination as it relates to Sections 7(B) and 7(A) of the LASH on the one hand and the Crop Policies on the other.

70.     In particular, Harrell Owens is entitled to a judgment ordering, finding, and declaring the following:

a.      the FCIC's interpretation of Section 12(c) of the Crop Policy, as reflected in the Director Review Determination, is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and is therefore unlawful and should be set aside pursuant to 5 U.S.C. § 706, 7 U.S.C. § 6999, and Section 20(e) of the Basic Provisions;

b.      the FCIC's conclusion, as reflected in the Director Review Determination, that Section 7(B) of the LASH does not conflict with Section 12(c) of the Crop Policy is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and is therefore unlawful and should be set aside pursuant to 5 U.S.C. § 706, 7 U.S.C. § 6999, and Section 20(e) of the Basic Provisions;

c.      Section 7(B) of the LASH, requiring use of the greater of appraised and harvested production in adjusting claims made under the Crop Policies, conflicts with Section 12(c) of the Crop Policies and therefore may not be

used in adjusting Harrell Owens's 2006 and 2008 claims under the Crop Policies;

    d.    Harrell and Owens's claims under its 2006 and 2008 Crop Policies shall be adjusted in accordance with Section 12(c) of the Crop Policies and by using all harvested production rather than appraised production.

71.    In the alternative, Harrell Owens is entitled to a judgment ordering, finding, and declaring the following:

    a.    the FCIC's interpretation of Section 12(c) of the Crop Policy, as reflected in the Director Review Determination, is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and is therefore unlawful and should be set aside pursuant to 5 U.S.C. § 706, 7 U.S.C. § 6999, and Section 20(e) of the Basic Provisions;

    b.    the FCIC's conclusion, as reflected in the Director Review Determination, that only size of sweet potatoes may be considered in conducting an appraisal is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and is therefore unlawful and should be set aside pursuant to 5 U.S.C. § 706, 7 U.S.C. § 6999, and Section 20(e) of the Basic Provisions;

    c.    Harrell and Owens's claim under its 2006 Crop Policy shall be adjusted in accordance with Section 12(c) of the Crop Policies and by excluding from appraised production any sweet potatoes damaged by a covered cause of loss.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment and Judicial Review Pursuant to 9 U.S.C. § 1, et seq. and Sections 20(c) and 20(b)(3) of the Basic Provisions)

72.     The allegations contained in the foregoing paragraphs are repeated, realleged, and incorporated herein by reference as if fully set forth.

73.     Pursuant to 9 U.S.C. § 10 and Sections 20(c) and 20(b)(3) of the Basic Provisions, Harrell Owens in entitled to judicial review of the arbitrator's award with respect to Harrell Owens's 2006 claim.

74.     The arbitrator was required to follow the FCIC interpretation, as reflected in the Director Review Determination of the NAD, with respect to issues concerning the meaning and applicability of the Crop Policy, Basic Provisions, and the LASH, and any of their terms.

75.     The arbitrator followed the Director's conclusion that Sections 7(B) and 7(A) of the LASH, which ACE used to adjust Harrell Owens's 2006 claim, do not conflict with Section 12(c) of the Crop Policy.

76.     For the reasons set forth herein, the Director Review Determination is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and is therefore unlawful and should be set aside pursuant to 5 U.S.C. § 706, 7 U.S.C. § 6999, and Section 20(e) of the Basic Provisions.

77.     Accordingly, the arbitration award should be vacated and set aside for its reliance and incorporation of the unlawful Director Review Determination pursuant to Federal Arbitration Act, 5 U.S.C. § 706, 7 U.S.C. § 6999, and Sections 20(c), 20(b)(3) and 20(e) of the Basic Provisions.

78.     In addition, the arbitrator failed to follow the Director Review Determination with respect to the meaning and applicability of Section 15(b) of the Basic Provisions and instead adopted an alternative interpretation advanced by ACE.

79.     Section 20(a)(1)(i) of the Basic Provisions specifically provides that "[a]ny interpretation by FCIC will be binding in any mediation or arbitration."

80.     The arbitrator therefore acted in excess of his authority by adopting ACE's unduly narrow and incorrect interpretation of Section 15(b) of the Basic Provisions rather than following the Director Review Determination with respect to the meaning and applicability of Section 15(b).

81.     Accordingly, on these additional grounds, the arbitration award should be vacated and set aside for the arbitrator acting in excess of his authority pursuant to 9 U.S.C. § 10 and Sections 20(a)(1), 20(c), 20(b)(3) and 20(e) of the Basic Provisions.

82.     Harrell Owens is therefore entitled to a judgment vacating the arbitration award and remanding the matter for further hearing in which Harrell Owens's 2006 claim is adjusted in accordance with the proper reading of Section 12(c) of the Crop Policy, as set forth herein, and in accordance with the Director Review Determination with respect to the meaning and applicability of Section 15(b) of the Basic Provisions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Harrell Owens respectfully requests that the Court:

1.     Enter judgment in favor of Harrell Owens and against the Defendants finding, ordering, and declaring as follows:

a.     the FCIC's interpretation of Section 12(c) of the Crop Policy, as reflected in the Director Review Determination, is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and is therefore unlawful and should be set aside pursuant to 5 U.S.C. § 706, 7 U.S.C. § 6999, and Section 20(e) of the Basic Provisions;

b. the FCIC's conclusion, as reflected in the Director Review Determination, that Section 7(B) of the LASH does not conflict with Section 12(c) of the Crop Policy is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and is therefore unlawful and should be set aside pursuant to 5 U.S.C. § 706, 7 U.S.C. § 6999, and Section 20(e) of the Basic Provisions;

c. Section 7(B) of the LASH, requiring use of the greater of appraised and harvested production in adjusting claims made under the Crop Policies, conflicts with Section 12(c) of the Crop Policies and therefore may not be used in adjusting Harrell Owens's 2006 and 2008 claims under the Crop Policies;

d. Harrell Owens's claims under its 2006 and 2008 Crop Policies shall be adjusted in accordance with Section 12(c) of the Crop Policies and by using all harvested production rather than appraised production.

2. In the alternative, enter judgment in favor of Harrell Owens and against the Defendants finding, ordering, and declaring as follows:

a. the FCIC's interpretation of Section 12(c) of the Crop Policy, as reflected in the Director Review Determination, is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and is therefore unlawful and should be set aside pursuant to 5 U.S.C. § 706, 7 U.S.C. § 6999, and Section 20(e) of the Basic Provisions;

b. the FCIC's conclusion, as reflected in the Director Review Determination, that only size of sweet potatoes may be considered in conducting an

appraisal is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and is therefore unlawful and should be set aside pursuant to 5 U.S.C. § 706, 7 U.S.C. § 6999, and Section 20(e) of the Basic Provisions;

c.    Harrell Owens's claim under its 2006 Crop Policies shall be adjusted in accordance with Section 12(c) of the Crop Policy and by excluding from appraised production any sweet potatoes damaged by a covered cause of loss.

3.    Enter judgment in favor of Harrell Owens and against the Defendants vacating the arbitrator's award and remanding the matter to the arbitrator for entry of an award in which Harrell Owens's claim under its 2006 Crop Policy is adjusted in accordance with Section 12(c) of the Crop Policies and by using all harvested production rather than appraised production.

4.    Enter judgment in favor of Harrell Owens and against the Defendants vacating the arbitrator's award and remanding the matter to the arbitrator for rehearing in which the Director's interpretation of Section 15(b) of the Basic Provisions is applied.

5.    In the alternative, enter judgment in favor of Harrell Owens and against the Defendants vacating the arbitrator's award and remanding the matter to the arbitrator for rehearing in which the condition of the sweet potatoes sampled by ACE's appraiser is considered to determine whether they were damaged by a covered cause of loss.

6.    Tax the costs of this action against Defendants; and

7.    Award Harrell and Owens Farm such other and further relief that this Court may deem just and proper.

This the 23rd day of December, 2009.

/s/ Charles E. Coble
Charles E. Coble
N.C. Bar No. 25342
E-mail:  ccoble@brookspierce.com
BROOKS, PIERCE, McLENDON,
   HUMPHREY & LEONARD, L.L.P.
P.O. Box 1800
Raleigh, NC  27602
Telephone:  919-839-0300
Facsimile:  919-839-0304

*Counsel for Plaintiff Harrell and Owens Farm*