IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:09-CV-217-FL

| | |
|---|---|
| HARRELL AND OWENS FARM, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FEDERAL CROP INSURANCE )<br>CORPORATION, a corporation within )<br>the United States Department of )<br>Agriculture; UNITED STATES )<br>DEPARTMENT OF AGRICULTURE, )<br>RISK MANAGEMENT AGENCY; )<br>ACE PROPERTY AND CASUALTY )<br>INSURANCE COMPANY; and, RAIN )<br>AND HAIL, LLC, )<br>)<br>Defendants. ) | ORDER |

This matter comes before the court on the motion of plaintiff and arbitration claimant Harrell and Owens Farm ("plaintiff") to vacate the arbitration award entered November 9, 2009, pursuant to 9 U.S.C. § 10 (DE # 4). Defendant and arbitration respondent ACE Property and Casualty Insurance Company and defendant Rain and Hail, LLC (collectively, "ACE Insurance"), have responded in opposition and ask the court to confirm the award pursuant to 9 U.S.C. § 9. Plaintiff's motion has been fully briefed, and the issues raised now are ripe for adjudication. For the reasons that follow, plaintiff's motion to vacate is denied, and the arbitration award is confirmed.

## BACKGROUND

Much of the background relevant to the instant motion was set forth by the court in its October 6, 2010 order upholding the interpretation of the underlying insurance policy made by defendants Federal Crop Insurance Corporation and United States Department of Agriculture, Risk Management Agency (collectively, "the Agency"). As stated by the court:

> Plaintiff Harrell and Owens Farms is a partnership engaged in the farming business in Edgecombe County, North Carolina. In 2005, plaintiff began participating in a sweet potato pilot crop insurance program administered by the Agency under the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. § 1501 et seq. Pursuant to the pilot program, plaintiff purchased insurance coverage for its sweet potato crop in 2006 from defendant [ACE Insurance]. The policy was reinsured by the Agency.
>
> On February 1, 2007, plaintiff submitted a demand for arbitration of a dispute arising out of ACE Insurance's adjustment of plaintiff's claim of indemnity for losses to plaintiff's sweet potato crop of 2006. In the arbitration proceedings, plaintiff and ACE Insurance disagreed as to the interpretation of the provision of the policy governing how loss was to be calculated. Plaintiff contended that its loss should be measured on the basis of actual harvested production of sweet potatoes in 2006. ACE Insurance, relying on the Agency's Sweetpotato New Pilot Loss Adjustment Standards Handbook ("the Handbook"), contended that loss should be measured on the basis of the greater of actual harvested production or a pre-harvest appraisal of sweet potato production.
>
> Plaintiff argued that the Handbook conflicted with the terms of the policy ("the Pilot Provisions"), which are set forth by the FCIC as part of the sweet potato pilot insurance program, and that the Pilot Provisions must control in such situations. Plaintiff further contended that, even assuming the appraisal number could be used, ACE Insurance had incorrectly performed the appraisal by not considering root quality in performing its count. The parties agree that the interpretation of the Pilot Provisions and the Handbook greatly affect the loss calculated and, as such, the amount plaintiff will receive in indemnification from ACE Insurance.
>
> Under standard provisions promulgated by the Agency ("the Basic Provisions" or "the Basic Policy") regarding all crop insurance policies, any dispute between an insurer and the insured involving the application or meaning of a policy provision must be submitted to the Agency for interpretation. The Agency's interpretation of the policy provision is then binding in the arbitration proceeding. Accordingly, plaintiff and ACE Insurance jointly submitted their dispute to the Agency on September 20, 2007. The Agency provided its interpretation of the Pilot Provisions

on December 17, 2007. This initial interpretation was favorable to ACE Insurance. On January 16, 2008, plaintiff submitted a request for reconsideration or clarification. In response, the Agency issued a second interpretation on April 7, 2008, which again favored ACE Insurance.

Plaintiff timely appealed the adverse agency decision to the National Appeals Division of the Department of Agriculture. A hearing was conducted on July 15, 2008, at which testimony, argument from counsel, and evidence were received. The hearing officer issued her appeal determination on August 21, 2008, upholding the Agency's interpretation of the Pilot Provisions. On September 24, 2008, plaintiff further appealed to the Director of the National Appeals Division. By written opinion issued December 30, 2008, the Director upheld in part and reversed in part the hearing officer's decision. The Director's decision represents the final administrative action available to plaintiff with respect to the interpretation of the policy.

Following issuance of the Agency's conclusive interpretation of the relevant policy provisions, the arbitrator reconvened the arbitration hearing on November 2, 2009. The resulting arbitration award, issued November 19, 2009, was favorable to ACE Insurance. The arbitrator found that plaintiff was entitled only to that sum already paid by ACE Insurance as indemnification. The administrative fees were ordered to be split equally between plaintiff and ACE Insurance.

(Order on Pet. for Judicial Review [DE # 31] at 1-4 (footnotes omitted).)

Plaintiff filed a complaint and petition for judicial review in this court on December 23, 2009, and filed a motion to vacate the arbitration award on February 11, 2010. The court bifurcated proceedings in this matter, and briefing on plaintiff's motion to vacate the arbitration award was stayed pending resolution of plaintiff's challenge to the Agency's interpretation of the policy provisions. As noted above, the court upheld the Agency's interpretation by order entered October 6, 2010.

Plaintiff filed its memorandum in support of its motion to vacate judgment on January 14, 2011. ACE Insurance timely responded in opposition on February 25, 2011. Finally, plaintiff timely filed a reply on March 21, 2011.

3

# THE ARBITRATION AWARD

The arbitration award which is the subject of plaintiff's motion to vacate is provided in relevant part as follows:

> To understand what the various [policy] documents mean and say the parties have sought a determination from the [Agency] which . . . has resulted in a final determination by [the Director of the National Appeals Division]. During the first several stages of the appeals process [plaintiff] was not successful. But, on final determination, the Director found that the Bas[ic] Policy and the . . . Handbook were in conflict and gave directions to this arbitration as to how to interpret the language in the above set forth documents. While the [D]irector found facts as to what happened between the parties, he was careful to leave the fact finding decision to this arbitration. . . . It is important to understand that the insurance agreement . . . mandates the way that the sweet potato loss is adjusted . . .; the Director's Review Determination is binding on this arbitration as to the meaning of the various documents that make up the agreement; and, the function of this arbitration is to find facts as to what happened in this process and apply them to this case.
>
> * * * *
>
> The first issue evolves [sic] around whether the factual circumstances of this arbitration fit within the parameters of paragraph l5(b) of the Basic Policy. If that provision applies to this determination of loss, it is clear that harvested production may be used in adjusting this claim. [The] Director . . . said: "Accordingly, if the arbitrator were to find that the factual circumstances of [plaintiff's] case fit within the parameters of Paragraph 15(b) of the Basic Policy, the arbitrator . . . would be obligated to apply the language of 15(b) without reference to the conflicting provisions in Section 7(B) of the [Handbook]." The answer to the First Issue depends on the facts of harvest and the reading and interpretation of Paragraph 15 of the Base Policy. That paragraph reads as follows:
>
>> "15. Production Included in Determining an Indemnity and Payment Reductions
>>
>> (a) The total production to be counted for a unit will include all production determined in accordance with the policy.
>>
>> (b) Appraised production will be used to calculate your claim if you are not going to harvest your acreage. Such appraisals may be conducted after the end of the insurance period. If you harvest the crop after the crop has been appraised:

4

> (1) You must provide us with the amount of harvested production (If you fail to provide verifiable records of harvested production, no indemnity will be paid and you will be required to return any previously paid indemnity for the unit that was based on an appraised amount of production); and
>
> (2) If the harvested production exceeds the appraised production, claims will be adjusted using the harvested production, and you will be required to repay any overpaid indemnity; or
>
> (3) If the harvested production is less than the appraised production, and:
>
> > (i) You harvest after the end of the insurance period, your appraised production will be used to adjust the loss unless you can prove that no additional causes of loss or deterioration of the crop occurred after the end of the insurance period; or
> >
> > (ii) You harvest before the end of the insurance period, your harvested production will be used to adjust the loss."

Specifically, subparagraph (b) states: "Appraised production will be used to calculate your claim <u>if you are not going to harvest your acreage</u>." (Emphasis added). The remainder of that subparagraph, including the numbered subparagraphs to (b), talk about the circumstance where ". . . you are not going to harvest your acreage." Since it is a fact that [plaintiff] always intended to harvest their entire planted acreage it is concluded that Paragraph 15 does not apply to these circumstances. [ACE Insurance] was therefore required to follow the procedures for adjusting this crop as set forth in the . . . Handbook.

\* \* \* \*

The second [i]ssue [of whether the appraisal was accurate or instead fatally flawed] is also resolved in favor of [ACE Insurance]. It is true that [plaintiff] raises interesting questions about how the appraisal process might be improved or conducted differently. The sample size does seem small. The rounding used in this instance could produce values that range high or low. And, it is rightfully argued that the weighing of the total sample at the end of the taken sample would be more

5

accurate that the method used. There is, however, no proof that the weight was wrong, or the other discrepancies directly affected the outcome of the appraisal.

What is apparent is that the procedure of using the appraisal, as called for in the . . . Handbook, as opposed to the harvested production appears to result in different figures. Appraisals are, by their very nature, estimates or projections of the value of the commodity appraised. In this case the appraisal was much higher than the actual harvested production. While, on the surface, it seems unfair that [plaintiff] cannot recover the full amount of its loss, both parties are bound by the agreement they made. That agreement does not allow for the loss to be adjusted using harvested production. [ACE Insurance] has, within a reasonable degree of accuracy, done the appraisal according to the . . . Handbook and that appraisal must guide the outcome of this arbitration.

(Compl. Ex. B.)

## DISCUSSION

A.   Standard of Review

A federal court may vacate an arbitration award only if the moving party "sustain[s] the heavy burden of showing one of the grounds specified in the Federal Arbitration Act (the 'FAA') or one of certain limited common law grounds." MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849, 857 (4th Cir. 2010). Under the FAA, a court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The permissible common law grounds for vacating an arbitration award "include those circumstances where an award fails to draw its essence from the contract, or the award

6

evidences a manifest disregard of the law." Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 234 (4th Cir. 2006).[1]

"Judicial review of an arbitration award in federal court is 'substantially circumscribed.'" Three S Delaware, Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007) (quoting Patten, 441 F.3d at 234). "In fact, the scope of judicial review for an arbitrator's decision 'is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all-the quick resolution of disputes and the avoidance of the expense and delay associated with litigation.'" Id. (quoting Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 193 (4th Cir. 1998)). "In reviewing such an award, 'a . . . court is limited to determine whether the arbitrators did the job they were told to do – not whether they did it well, or correctly, or reasonably, but simply whether they did it.'" Id. (quoting Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir.1994)).

B.     Analysis

Plaintiff submits two grounds for vacatur of the arbitration award in this case. First, plaintiff contends that the arbitrator exceeded the scope of his authority by failing to follow the Agency's binding interpretation of the policy. Specifically, plaintiff argues that the arbitrator erred in concluding that Paragraph 15(b) of the Basic Provisions only applies in cases where the producer was not going to harvest his acreage, such that plaintiff's claim did not fall within the contours of that provision. Accordingly to plaintiff, the Agency's interpretation is not limited to such cases.

---

[1] It is unclear whether the common law grounds for vacatur of an arbitration award, including "manifest disregard of the law" or "essence of the agreement," remain valid following the Supreme Court's decision in Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576 (2008). See generally Regale, Inc. v. Thee Dollhouse Productions N.C., Inc., --- F. Supp. 2d ----, 2011 WL 192518, at *4 n.2 (E.D.N.C. 2011) (collecting cases). Until the Fourth Circuit or Supreme Court clarifies this matter, the court will assume, without deciding, that a party challenging an arbitration award may continue to invoke these common law grounds for vacatur.

Second, plaintiff contends that the arbitrator's award fails to draw its essence from the policy because the arbitrator did not consider whether the amount of sweet potatoes actually harvested by plaintiff more accurately measured production to count than did ACE Insurance's appraisal. According to plaintiff, it conclusively demonstrated that harvested production was a more accurate measure of production to count than the appraisal estimate provided by ACE Insurance. Nevertheless, the arbitrator used the appraisal estimate to calculate plaintiff's loss.

1. Scope of Authority

"[W]hen the parties have not agreed to arbitrate a matter, the arbitrator lacks authority to resolve the matter, '[f]or arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" U.S. Postal Serv. v. Am. Postal Workers Union, 204 F.3d 523, 527-28 (4th Cir. 2000) (quoting United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960)). However, "[i]n evaluating whether an arbitrator has exceeded his power, . . . 'any doubts concerning the scope of arbitrable issues as well as any doubts concerning the scope of the arbitrators' remedial authority, are to be resolved in favor of the arbitrators' authority as a matter of federal law and policy.'" Three S. Delaware, Inc., 492 F.3d at 531-32 (quoting Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 991 F.2d 141, 147 (4th Cir. 1993)).

As plaintiff correctly notes, the Basic Provisions carve out from arbitration any "policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure." 7 C.F.R. § 457.8 ¶ 20(a)(1). A dispute over an interpretation of the policy instead must be submitted to the Agency, and the Agency's interpretation "will be binding in any . . . arbitration." Id. ¶ 20(a)(1)(i).

8

"Failure to obtain any required interpretation from [the Agency] will result in the nullification of any agreement or award." Id. ¶ 20(a)(1)(ii).

Here, the parties did submit their dispute over the interpretation of the policy to the Agency. At the initial levels of the appeal process, plaintiff argued that Paragraph 15(b) of the Basic Policy applied only in circumstances where the producer does not intend to harvest the acreage at issue. (See Brief Statement of Appellant/Participant at 3 [DE # 21 at p. 15].) The hearing officer agreed, concluding that Paragraph 15(b) "only applies to those instances in which the insured producer indicates to the [insurer] that he or she does not intend to harvest the acreage." (Hearing Officer's Decision at 6 [DE # 21 at p. 76].) The hearing officer, however, determined that inclusion of Paragraph 15(b) in the Agency's analysis was not error based on other provisions of the policy. (Id.) Specifically, the hearing officer concluded that Sections 14 and 15(a) of the Basic Policy and Section 12 of the Pilot Provisions supported the Agency's analysis. (Id.)

On appeal before the Director, plaintiff noted that it believed the hearing officer had correctly concluded that Paragraph 15(b) did not apply in the circumstances presented. (See Request for Director Review at 4 [DE # 21-1 at p. 11].) Instead, plaintiff focused its appeal on the argument that Section 7(B) of the Handbook conflicted with Section 12(b) of the Pilot Provisions. (See id. at 12-13 [DE #21-1 at pp. 19-20].) Although the Director found no conflict with the Pilot Provisions, he determined that Section 7(B) of the Handbook conflicted with Paragraph 15(b) of Basic Policy:

> A plain reading of Paragraph 15(b) makes it clear the Basic Policy contemplates that in cases where a producer harvests the crop after the crop has been appraised (as long as the producer can provide the insurance company with records establishing the amount of harvest production), there are circumstances in which harvested production even if it is lower than appraised production must be used to determine production to count for purposes of adjusting loss. See 7 C.F.R. § 457.8, Paragraph 15(b)(1) and (b)(3). Yet, as [plaintiff] notes, Section 7(B) of the [Handbook] excludes such circumstances, stating that production to count for any harvest acreage

9

> be the greater of the appraisal or the total of all harvested sweet potatoes in all circumstances in which check strips are left for purposes of conducting the appraisal. Thus, the [Handbook] language at Section 7(B) directly conflicts with the language found at Paragraph 15(b) of the Basic Policy. . . . Accordingly, if the arbitrator were to find that the factual circumstances of [plaintiff's] case fit within the parameters of Paragraph 15(b) of the Basic Policy, the arbitrator . . . would be obligated to apply the language of 15(b) without reference to the conflicting provisions in Section 7(B) of the [Handbook].

(Compl. Ex. A at 13-14.) However, the Director stated that his role "[was] limited to a review and determination of whether [the Agency] erred in its interpretation of the procedures set forth in the [Handbook]" and that he did not "purport to determine the facts of [plaintiff's] case, nor in what manner those facts might invoke the various provisions of the applicable policies." (Id. at 14.)

The problem with the Director's final determination is that it does not explicitly tell the arbitrator or the parties what the "circumstances in which harvested production even if it is lower than appraised production must be used to determine production to count for purposes of adjusting loss" are. It appears that these "circumstances" include all cases in which the producer provides the insurance company with the amount of harvested production, 7 C.F.R. § 457.8 ¶ 15(b)(1), and harvests before the end of the insurance period, id. ¶ 15(b)(3)(ii). However, it is also possible that the Director did not mean to overturn the hearing officer's determination that Paragraph 15(b) "only applies to those instances in which the insured producer indicates to the [insurer] that he or she does not intend to harvest the acreage." (Hearing Officer's Decision at 6 [DE # 21 at p. 76].) The statement that "appraised production will be used to calculate your claim if you are not going to harvest your acreage" does not appear in the Director's discussion of the circumstances in which Paragraph 15(b) applies.

After considering the arguments of the parties, the arbitrator adopted the interpretation that Paragraph 15(b) did not apply based on the facts presented because plaintiff always intended to

10

harvest its acreage. Plaintiff argues that the arbitrator did not treat the Agency's interpretation as binding, but it appears to this court that the arbitrator simply adopted a different understanding of the Agency's interpretation than did plaintiff. The distinction between impermissibly interpreting the policy or failing to treat the Agency's conclusions as binding, see 7 C.F.R. § 457.8 ¶ 20(a)(1), and arguably misapplying the Agency's interpretation of the policy is a thin one, but it is sufficient to conclude that the arbitrator did not exceed his authority in this case. Cf. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598 (1960) ("A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."); Apex Plumbing Supply, Inc., 142 F.3d at 193-94 ("[N]either misinterpretation of a contract nor an error of law constitutes a ground on which an award can be vacated . . . [and] a conclusion reached by the [arbitrator], even if questionable . . . does not constitute exceeding [his] power." (internal quotation marks and citations omitted; some alterations in original)).

  2. Essence of the Contract

"[A]n arbitration award 'does not fail to draw its essence from the agreement merely because a court concluded that an arbitrator has misread the contract.'" Choice Hotels Int'l, Inc. v. SM Prop. Mgmt., LLC, 519 F.3d 200, 207 (4th Cir. 2008) (quoting Three S. Delaware, Inc., 492 F.3d at 528). "In this regard, 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'" Id. (quoting U.S. Postal Serv., 204 F.3d at 527). An award fails to draw its essence from the contract only when the result is not "rationally inferable from the contract," Apex Plumbing Supply, Inc., 142 F.3d at 193 n.5, as when the arbitrator "has disregarded

11

or modified unambiguous contract provisions or based an award upon his own personal notions of right and wrong," Three S Delaware, Inc., 492 F.3d at 528.

As already noted, plaintiff argues that the arbitration award fails to draw its essence from the agreement because ACE Insurance's appraisal was used to measure loss even though the arbitrator found plaintiff's actual harvest to be a more accurate measure. However, the arbitrator concluded that the question was not whether harvested production was more accurate than the appraisal, but rather whether the policy called for the appraisal value to be used and whether that value was sufficiently accurate. The arbitrator used ACE Insurance's appraisal because the Handbook "does not allow for the loss to be adjusted using harvested production." (Compl. Ex. B at 7.) After considering the arguments of the parties, the arbitrator concluded that ACE Insurance's appraisal resulted was performed with "a reasonable degree of accuracy." (Id.)

Plaintiff contends that the Agency argued before this court, in defending its interpretation of the policy against plaintiff's challenge, that harvested production *will be used* if it proves to be the more accurate measure of production to count. But whether or not the Agency made such an argument before this court, the only arguments that were relevant in arbitration were those made before the arbitrator, and the only interpretation of the policy that was binding on the arbitrator was that of the Director. The arbitrator considered the parties' arguments and applied the Agency's interpretation as set forth in the Director's determination. The resulting award does not fail to draw its essence from the agreement.

C. Confirmation of the Arbitration Award

In its response in opposition to the motion to vacate, ACE Insurance asks the court to confirm the arbitration award. Under the FAA,

12

> [i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10 and 11].

9 U.S.C. § 9. The requirement that the parties agree on court enforcement of and judgment on an arbitration award "need not be satisfied by any magical language," but instead is met "'so long as the parties *contemplated* judicial enforcement.'" Qorvis Commc'ns, LLC v. Wilson, 549 F.3d 303, 308 (4th Cir. 2008) (quoting Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 586 n.6 (2008)). As such, even "a simple contractual reference of disputes to arbitration under the rules of the American Arbitration Association implies binding arbitration with authorization of enforcement of an award by judgment." Id. (citing Rainwater v. Nat'l Home Ins. Co., 944 F.2d 190, 191-94 (4th Cir. 1991)).

Each of the prerequisites for an order confirming arbitration is present here. ACE Insurance requested confirmation of the arbitration award in its answer to this lawsuit. (See Answer of Ace Insurance at 12-13.) That answer was filed on March 30, 2010, within one year of entry of the arbitration award. The arbitration agreement contemplates judicial enforcement of arbitration where it provides for "binding arbitration" conducted "in accordance with the rules of the American Arbitration Association" and subject to "judicial review." See 7 C.F.R. § 457.8 ¶ 20. Finally, the award has not been vacated, modified, or corrected. As such, ACE Insurance's request for confirmation of the award is granted.

## CONCLUSION

For the reasons set forth above, plaintiff's motion to vacate the arbitration award (DE # 4) is DENIED. Pursuant to 9 U.S.C. § 9, the arbitration award entered November 19, 2009, is

CONFIRMED. The Clerk of Court is directed to enter judgment confirming the arbitration award, and to close this case.

SO ORDERED, this the 23rd day of March, 2011.

_____
LOUISE W. FLANAGAN
Chief United States District Court Judge